UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **STEVEN PAUL BURNS**  DOC #428006 | : | CIVIL ACTION NO. 14-CV-2261  SECTION P |
| **VERSES** | : | JUDGE MINALDI |
| **CALCASIEU CORRECTIONAL CENTER MEDICAL DEPARTMENT, ET AL** | : | MAGISTRATE KAY |

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint filed *in forma pauperis* by *pro se* plaintiff Steven Paul Burns (hereinafter "Burns"), an inmate in custody of the Louisiana Department of Public Safety and Corrections (hereinafter "LDOC"). He is currently incarcerated at Allen Correctional Center in Kinder, Louisiana, but complains of events that occurred during his incarceration at Calcasieu Correctional Center (hereinafter "CCC") in Lake Charles, Louisiana.

Named as defendants are the CCC Medical Department; CCC Nurses Charlotte and Melissa; CCC Dentist David; CCC Assistant Wardens Miller and Charles LaVergne; the Calcasieu Parish Police Jury; the CCC Medical Department Supervisor (unnamed); and the CCC, itself. Doc. 9, pp. 2-4.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this court.

### I.
#### BACKGROUND

Burns arrived at CCC on March 11, 2014. Doc. 9, p. 8. During initial intake screening, Burns informed Nurse Leslie that he needed oral surgery due to broken and impacted wisdom teeth and that he had recently gone to the emergency room at Christus St. Patrick Hospital in

Lake Charles, Louisiana, where he was diagnosed with vertebral fractures and degenerative discs in his spine. *Id.* He was discharged from the hospital on March 6, 2014, was given prescriptions for various non-narcotic medications including a muscle relaxer and an anti-inflammatory and scheduled a follow-up appointment with Dr. Ping, a specialist at Moss Regional Hospital, for consultation about treatment for his spine. *Id.* Burns claims that he was not taken to the follow-up appointment nor given the medications prescribed to him. Doc. 9, p. 11.

Nurse Leslie assigned Burns to a bottom bunk on a bottom floor but, instead, he was put in a three-person cell with the bottom bunks already taken by other inmates. Doc. 9, p. 9. Unable to demand that the inmates leave the bottom bunks, Burns claims that he slept on a mattress on the floor because his alleged disabilities prevented him from climbing into the top bunk. *Id.* He alleges that he failed to immediately notify a deputy about the situation because doing so could potentially cause other problems. *Id.* On March 25, 2014, however, Burns asked Deputy Duplechain if he could be moved to another cell that had a bottom bunk available. Doc. 9, p. 10. According to Burns, Duplechain stated "you're just coming to me with this now?" and after speaking with the other inmates in his cell obtained for Burns the bottom bunk initially assigned to him *Id.*

On March 27, 2014, Burns saw two specialists from the LSU Health and Sciences Center in CCC's medical department, one of whom told Burns that he needed a spinal injection that was unavailable at CCC. Burns was prescribed Naproxen and Meloxicam. *Id.*

On April 11, 2014, Burns' wisdom teeth caused his gums to bleed profusely. Doc. 9, p. 11. Nurse Charlotte was notified but since she was leaving for the day, Burns was instructed to see her the following morning. His mouth bled throughout the night and allegedly cause him extreme pain. Doc. 9, pp. 11-12. The next morning Nurse Charlotte examined his teeth and told

him that CCC did not pull wisdom teeth unless they were "broken through and there's enough to grab." Doc. 9, pp. 12-13. Burns was given Motrin, antibiotics, and gauze. Doc. 9, p. 13.

On April 17, 2014, as Burns was getting out of his bed, he "felt a crack and popping sensation" in his spine accompanied by extreme pain. Doc. 9, p. 14. He was transported to the emergency room at Lake Charles Memorial Hospital, where he was x-rayed and diagnosed with a pinched nerve. *Id.* He experienced more back pain on April 20, 2014, which allegedly caused him to drop to the floor. *Id.* Burns states that he could not move and had to have his medication brought to him in his cell. Doc. 9, p. 15. On April 22, 2014, Burns again saw the two specialists from the LSU Health and Sciences Center, and was told that he still needed the aforementioned spinal injections. *Id.* He met with CCC's social worker on May 7, 2014, and explained his health problems and concerns. *Id.*

On May 8, 2014, Burns saw CCC dentist Dr. David. *Id.* In regard to Burns' wisdom teeth, Dr. David told him that "he might be able to get one." Doc. 9, p. 16. Burns states that he did not want Dr. David to attempt to extract his teeth if there was merely a possibility that it could be done, so he terminated the appointment. *Id.* Thereafter, Burns claims that Nurse Charlotte told him that in order to get his wisdom teeth extracted, he would have to find an oral surgeon, pay for the procedure, and pay a transportation fee. *Id.* Burns states that he experienced more problems with his wisdom teeth when pieces of his teeth fell out while eating on June 21 and June 29, 2014. Doc. 9, p. 17.

On July 2, 2014, Judge Ron Ware sentenced Burns to 18 months incarceration, and recommended placing him at Steven Hoyle Rehabilitation Center with an immediate transfer for medical attention. Doc. 9, pp. 17-18; Doc. 10, att. 4, p. 2. Thereafter, Burns wrote letters to several wardens, including defendants Miller and LaVergne, informing them of the sentence and asking to be transferred in order to receive proper medical care. Doc. 9, pp. 18, 19.

On July 15, 2014 Burns saw Nurse Melissa who increased his dosage of Neurontin and prescribed him a sleep aid. Doc. 9, pp. 17, 18.  Burns states that he experienced back pain throughout the month of August and that, at some point during that time, he also saw a psychiatrist, Dr. Hayes.  Doc. 9, pp. 19-20.  Dr. Hayes increased the dosage of Burns' sleep medication and further prescribed medications for Burns' nerves and pain *Id.*  Throughout September, Burns states that the pain in his back and in his wisdom teeth persisted, and that his mouth continued to bleed. He alleges that he wrote letters to several wardens asking for help.  *Id.*

On October 9, 2014, Dr. David, extracted one of Burns' teeth, but Burns states that he continued to experience pain and bleeding in his mouth. *Id*. He claims that on October 29, 2014, a large portion of his wisdom tooth broke while he was eating. Doc. 9, pp. 20-21.

Burns contends that these problems with his back and wisdom teeth continue to the present time despite changes and adjustments to his medications and dosages. Doc. 9, p. 21.

## II.
### ALLEGED CONSTITUTIONAL VIOLATIONS

Burns claims that defendants Miller, LaVergne, and CCC have violated his Eighth and Fourteenth Amendment rights by failing to protect him from alleged harm resulting unsatisfactory medical care.  Doc. 9, pp. 22, 25.  Similarly, he invokes the Eighth Amendment's prohibition of cruel and unusual punishment in further claiming that defendants Charlotte, Melissa, CCC, CCC Medical Department, and Dr. David have delayed, denied, interfered with, and/or refused him necessary medical care.  Doc. 9, pp. 22-26.  Burns further asserts claims against the Calcasieu Parish Police Jury because that entity is "over the [CCC] Medical Department…funds it[,] and makes its policies."  Doc. 1, p. 8.  Finally, Burns contends that the defendants have violated the Americans with Disabilities Act (hereinafter "ADA") by refusing to give him proper medical attention.  Doc. 1, p. 11.

### III.
#### REQUESTED RELIEF

Burns seeks an unspecified amount of compensatory and punitive damages for pain and suffering.  Doc. 1, p. 11; Doc. 9, p. 29.  He also seeks injunctive relief asking that we (1) compel the defendants to provide oral surgery via an "outside specialist, (2) order the defendants to provide back treatment at an "outside clinic, and (3) prevent the defendants from retaliating against him for filing the instant suit. Doc. 9, p. 28.

### IV.
#### LAW AND ANALYSIS

*A. Frivolity Review*

Burns has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Doc. 5.  Under 28 U.S.C. § 1915(e)(2)(B)(i), (ii), and (iii), district courts are directed to dismiss actions they determine to be frivolous or malicious, that fail to state a claims on which relief may be granted, or that seek monetary relief from a defendant immune from such relief.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). A complaint fails to state a claim upon which relief may be granted if it is clear that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 215 (5th Cir. 1998). In determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept the plaintiff's allegations as true. *Horton v. Cockrell,* 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley,* 157 F.3d at 1025 (failure to state a claim).

### B. *42 U.S.C. § 1983*

The provisions of 42 U.S.C. § 1983 proscribe conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. Thus, an initial inquiry in a lawsuit filed under § 1983 is whether a plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim. In order to hold the defendants liable under 42 U.S.C. § 1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *Hessbrook v. Lennon,* 777 F.2d. 999, 1005 (5th Cir. 1985).

With respect to prisons and prisoners, a constitutional violation under the Eighth Amendment occurs only when two requirements are met. First, the prison official's act or omission must result in a deprivation that is sufficiently serious, such that it results in the denial of "the minimal civilized measure of life's necessities" or denies the prisoner some basic human need. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *Wilson v. Setter*, 501 U.S. 294, 304 (1991). Second, the court must determine that the prison official responsible for the deprivation has been "'deliberately indifferent' to inmate health or safety." *Farmer,* 511 U.S. at 834. A finding of deliberate indifference requires a finding that a prison official was personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed in undertaking the act or omission complained of, and that he or she actually drew that inference. *Id.* at 837.

### C. *Medical Care*

Burns' allegations simply do not rise to the level of cruel and unusual punishment under the Eight Amendment. In order to prevail on such claims, convicted prisoners must establish

that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas,* 245 F.3d 447, 458–59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not, in fact perceive, is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001).

Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson,* 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner," and so the prisoner must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 103,106; *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). The official must have a subjective intent to cause harm. *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003). In other words, deliberate indifference (i.e., a subjective intent to cause harm), cannot be inferred merely from a prison official's failure to act reasonably. *Hare,* 74 F.3d at 649.

Furthermore, a plaintiff's mere disagreement with what medical care is appropriate or with the course of treatment offered by the medical staff will not, alone, suffice to state a claim of deliberate indifference to serious medical needs. *Norton v. Dimazana,* 122 F.3d 286, 292 (5th

Cir.1997). In *Woodall v. Foti,* 648 F.2d. 268, 272 (5th Cir.1981), the Fifth Circuit stated that the applicable standard requires a balancing of the needs of the prisoner with the needs of the penal institution, and the test is one dependent on medical necessity rather than desirability.

Additionally, the fact that a plaintiff does not believe his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *Id*. Merely alleging that a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimensions. *Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992). Similarly, merely asserting the fact that a plaintiff continues to suffer from pain is insufficient to establish a constitutional violation. *Mayweather v. Foti,* 958 F.2d 91 (5th Cir. 1992).

In the instant case, the information contained in Burns' complaint and amended complaints shows that he received a substantial amount of medical treatment, including appointments with multiple doctors, testing, scans, sick call appointments, medication, tooth extraction, etc. Burns' allegations, at most, merely reflect his disagreement with medical staff regarding the procedures necessary to treat his medical issues. Such claims do not amount to a constitutional violation and absent a constitutional violation, federal courts are generally reluctant to interfere in the internal affairs of a prison. See *Shaw v. Murphy*, 532 U.S. 223 (2001). Decisions with respect to the medical treatment of prisoners are best left to the prison officials qualified to make those decisions. Therefore, Burns has not alleged facts sufficient to establish deliberate indifference and his claims in this regard should be dismissed.

### D. *Improper Defendants—CCC and CCC Medical Department*

CCC and CCC medical department do not have the capacity to be sued in this action. Under Fed. R. Civ. P. 17(b) the "capacity to sue or be sued shall be determined by the law of the

state in which the district court is held." Thus, Louisiana law governs whether CCC and the prison medical department have the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code Ann. art. 24. In Louisiana, correctional centers are not legal entities capable of suing or being sued. *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988). In other words, the State of Louisiana has not granted juridical status to CCC or to the prison medical department. Burns' suit against these non-juridical entities fails to state a claim upon which relief can be granted and should be dismissed.

### E.   Calcasieu Parish Police Jury

Burns' claims against the Calcasieu Parish Police Jury are also not cognizable. A "police jury" is a unit of local Louisiana government akin to a county board of supervisors. La. Rev. Stat. Ann. § 33:1236. Despite its name, the police jury does not directly furnish any of the services conventionally associated with the "police." Most of these services are traceable in Louisiana to the sheriff. *Id.* § 33:5539.

Under Louisiana law, the police jury has no responsibility over the daily operation of the jail. However, state law does require the police jury to "provide ... a good and sufficient jail," La. Rev. Stat. Ann. § 33:4715, to be "responsible for the physical maintenance of all parish jails and prisons," *id.* § 15:702, and to pay all expenses incurred in "the arrest, confinement, and prosecution of persons accused or convicted of crimes." *Id.* § 15:304; *Amiss v. Dumas*, 411 So. 2d 1137, 1140–42 (La. Ct. App. 1st Cir. 1982) (discussing statutory allocation of prison responsibility). Given the limited scope of the police jury's duties, Burns' complaint simply does not state a cause of action against this local governmental body.

### F. Injunctive Relief

As previously stated, Burns has been transferred from CCC. Therefore, his requests for injunctive relief are moot.

It is well-settled that a prisoner's transfer out of an allegedly offending institution generally renders his claims for injunctive relief moot. *Herman v. Holiday*, 238 F.3d 660 (5th Cir. 2001) (even if plaintiff had established an Eighth Amendment violation, his transfer from the offending institution rendered his claims for declaratory and injunctive relief moot) (citing *Cooper v. Sheriff, Lubbock County, Tex.,* 929 F.2d 1078, 1084 (5th Cir. 1991). In order for Burns' claims to remain viable, he would have to establish that the possibility of returning to CCC would make his claims capable of repetition. *See Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir.1975). To succeed, Burns would have to show either a "demonstrated probability" or a "reasonable expectation" that he would again be incarcerated at CCC. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). At its most lenient, the standard is not "mathematically precise" and requires that a plaintiff show a "reasonable likelihood" of repetition. *Honig v. Doe*, 484 U.S. 305, 318-319, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988). Even under the most permissive interpretation, however, Burns' complaint does not, and cannot, meet that standard. Simply put, he has been released from the custody of CCC and his requests for injunctive/declaratory relief are moot. *Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir. 1987).

### G. ADA Claim

Burns alleges that defendants have violated the ADA by refusing to give him adequate medical care. However, Burns has not shown that he is disabled or that his claim would be one that is even covered under the ADA.

Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs,

or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus to establish a *prima facie* case for discrimination under the ADA, a plaintiff must, first, be a qualified individual with a disability. *Mason v. United Air Lines*, 274 F.3d 314, 316 (5th Cir. 2001) (unpublished opinion). Further, in order to succeed on an ADA claim, a plaintiff must then show "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (citing)). To have a qualifying disability, a plaintiff must demonstrate "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* at 499–500 (internal quotations omitted); *Nottingham v. Richardson*, 499 F. App'x 368, 376 (5th Cir. 2012) (unpublished opinion).

Thus, even if Burns had shown that he was a qualified individual with a disability, the allegations he raises here would still fail to state an ADA claim because there is no evidence of discrimination.[1] The alleged deprivation in this case relates to the defendants' failure to provide adequate medical care but there is no allegation that that failure resulted from discrimination on account of plaintiff's disability. Accordingly, the facts, here, do not support a claim for discrimination under the ADA and any such claims Burns attempts to make should be dismissed.

### III.
#### CONCLUSION

For the reasons stated above, Burns' civil rights complaint is frivolous and fails to state a claim upon which relief can be granted. Therefore, **IT IS RECOMMENDED** that the complaint

---

[1] See *Nottingham, supra,* citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled. His complaint is that he was not given special accommodation....").

**DENIED AND DISMISSED WITH PREJUDICE** in accordance with 28 U.S.C. § 1915(e)(2)(B)(i), (ii), and (iii).

**IT IS FURTHER RECOMMENDED THAT** all pending motions (including doc. 10) be hereby denied.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 17th day of June, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE